United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYA ZYSMAN, | No. C-13-02813 YGR (DMR) |
| Plaintiff(s), | **ORDER RE: EX PARTE DISCOVERY LETTERS [DOCKET NO. 59 AND 60]** |
| v. | |
| ZANETT INC ET AL, | |
| Defendant(s). | |
| _____/ | |

Before the court are two ex parte discovery letters filed by pro se Plaintiff Maya Zysman and Defendants Zanett Inc., Claudio Guazzoni, Dennis Harkins, Ed Elverud, and Sumner Harrington, Ltd. (*See* Pl.'s Mot. [Docket No. 59] and Defs.' Mot. [Docket No. 60].) Plaintiff seeks to compel responses to four specific requests for production of documents ("RFP" or "RFPs"), and Defendants seek responses to four contention interrogatories and approximately 30 RFPs. The court held a hearing on the letters on March 27, 2014. For the reasons stated at the hearing and below, Plaintiff's motion to compel is **granted in part and denied in part**, and Defendants' motion to compel is also **granted in part and denied in part**.

## I. Background

Zanett is a corporation that offers business and technology consulting services. (Compl. [Docket No. 1] ¶ 5.) Guazzoni is CEO and Harkins is CFO and Head of Investor Relations of

Zanett. (Compl. ¶¶ 6-7.) Sumner Harrington is a brokerage agency in Minneapolis. (Compl. ¶ 9.) Elverud is the President and Chief Compliance Officer of Sumner Harrington. (Compl. ¶ 8.)

Plaintiff is a retired teacher. (Compl. ¶ 4.) In 2010, Plaintiff invested her life savings into four "Zanett notes," which were investment instruments sold by Defendants. (Compl. ¶ 17.) In 2011, when Plaintiff attempted to redeem these notes, Defendants were unable to do so. (Compl. ¶¶ 19-25.) As of March 2013, Defendants owed Plaintiff $364,729.94, apparently none of which has been paid. (Compl. ¶ 28.) According to Defendants, Sumner Harrington and Elverud were the "primary administrators" of the Zanett notes program, while Zanett, Harkins, and Guazzoni "did not run the day-to-day administration" of the program. (Defs.' Mot. 3-4.)

Plaintiff brings claims for breach of notes, breach of contract, breach of fiduciary duty, negligent misrepresentation, failure to supervise, constructive fraud, and fraud. (Compl. ¶¶ 65-121.)

## II. Legal Standards

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006).

## III. Analysis

**A.  Plaintiff's Motion to Compel Responses for Production of Documents**

**i. RFP No. 1: Plaintiff's File**

Plaintiff's RFP No. 1 is as follows:

> REQUEST NO. 1: The complete contents of Plaintiff's file including but not limited to all communications between all defendants and non-parties in relation to Plaintiff. These writings shall include memoranda, interoffice correspondence, emails, phone

notes and all other forms of communication.

Defendants have produced some documents in response to this request, but Plaintiff objects to Defendants' responses on several grounds.

First, Plaintiff argues that Defendants' production is missing communications between the named Defendants regarding Plaintiff and the decisions they made about her Zanett Notes. (Pl.'s Mot. 2.) Plaintiff specifically asserts that she is aware of conversations that took place between Guazzoni and Harkins, as well as Elverud and Harkins, but no communications between these Defendants were produced. (Pl.'s Mot. 2.) Defendants stated in their discovery letter and at the hearing that they are rechecking the results of their search and will produce any inadvertently withheld documents. Defendants' counsel also confirmed at the hearing that he would ask his clients whether there were additional custodians who could have responsive documents, and would search those custodians' files as well.

Second, Defendants have searched through certain email and hard copy files, but Defendants also maintain a "proprietary database that housed much of the portfolio-wide account information . . . . [that] may only be accessed through proprietary software." (Defs.' Mot. 3.) Defendants aver that some relevant documents from the database were produced as email attachments and in other hard copy documents, and that "[i]f Plaintiff identifies a report from the database, Defendants will produce it in response to a reasonable request." (Defs.' Mot. 3-4.) At the hearing, the court ordered that Defendants provide Plaintiff with a description of the data fields in the database, as well as any other information Plaintiff would need to understand what data is contained in the database, such that Plaintiff could instruct Defendants as to what reports she wants generated from the database.

Third, Plaintiff also contends that the documents produced are unlabeled, disorganized, shredded, and duplicative. (Pl.'s Mot. 2.) Defendants assert that the documents were produced in the manner they were kept in the ordinary course of business. (Defs.' Mot. 4.) Federal Rule of Civil Procedure 34(b)(2)(E) requires that "a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."

Fed. R. Civ. P. 34(b)(2)(E). A party who chooses to produce documents as they are ordinarily maintained "must do just that—produce the documents organized as they are maintained in the ordinary course of producing party's business, with at least some modicum of information regarding how they are ordinarily kept in order to allow the requesting party to make meaningful use of the documents." *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 337 (N.D.N.Y. 2008). "At a minimum, that means that the disclosing party should provide information about each document which ideally would include, in some fashion, the identity of the custodian or person from whom the documents were obtained, an indication of whether they are retained in hard copy or digital format, assurance that the documents have been produced in the order in which they are maintained, and a general description of the filing system from which they were recovered." *Id.* Moreover, if the business record-keeping system used by the producing party "is so deficient as to undermine the usefulness of production," that party may not have met its obligations under Rule 34. *Id.* at 336 n.2.

At the hearing, Plaintiff gave some examples of what she perceived to be the disorganization of the files, but she appeared to be asking Defendants to explain or alter files (e.g., by placing headings on unlabeled tables contained in the body of emails). Under Rule 34, Defendants are only required to produce documents as they are kept in the ordinary course of business, not to alter the documents or explain information contained therein. Such information would be better gained through interrogatories or questioning at a deposition. Accordingly, Plaintiff's motion to compel Defendants to produce reorganized or altered documents is **denied**. The parties shall meet and confer regarding any further disputes about the organization of the files.

**ii. Request for Production No. 4: Insurance Policies**

Plaintiff's RFP No. 4 is as follows:

REQUEST NO. 4: Copies of all policies or certificates of insurance in your name or that of your spouse from January 1, 2005 to date of production, whether the said insurance is now in effect or not.

Defendants initially objected to the request, and responded that Defendants were "unaware of any insurance agreements" which could be used to satisfy any judgment in this case. Subsequently, Defendants produced an Executive Protection Policy (the "Policy"). (Pl.'s Mot. 3; Defs.' Mot. 4.)

The Policy was purchased in 2011 and renewed twice until March 31, 2014. (Pl.'s Mot. 3.) According to Plaintiff, the total 3-year premium amounts to almost $200,000. (Pl.'s Mot. 3.)

Defendants objected to the request insofar as it required Defendants to produce the insurance policies of the individual Defendants or their spouses, but such policies could be relevant if they contained provisions providing for payment of judgments for the kinds of claims asserted by Plaintiff. At the hearing, Defendants' counsel conceded the relevance of such documents, and confirmed that he would clarify the scope of this RFP with his clients and produce any responsive documents.

Plaintiff seeks to compel Defendants to produce the documents identifying the source of the insurance premium payment. (Pl.'s Mot. 3.) By producing the Policy and agreeing to produce other responsive insurance policies or certificates, Defendants have substantially complied with their obligations in producing responsive documents to Plaintiff's request. Plaintiff's request did not ask for documents naming the source of the premium payments. Moreover, Plaintiff did not persuasively explain why such information would be relevant. Plaintiff generally argued that she believes Defendants engaged in a pyramid scheme through which they illegally siphoned proceeds for their personal gain. Plaintiff asserts that she should thus be able to obtain detailed information about every operational transaction of the Defendant entities, including payment of insurance premiums. This is far too broad and burdensome. Defendants produced financial statements for the relevant time period. The court would compel more detailed discovery on certain financial transactions only if Plaintiff can make a more focused demonstration of relevance. Accordingly, Plaintiff's motion to compel Defendants to produce documents identifying the source of the insurance payments is **denied**.

### iii. Request for Production No. 16: Legal Representation

Plaintiff's RFP No. 16 is as follows:

> REQUEST NO. 16: Invoices, retainer agreements and other documents pertaining to your legal representation in this case showing amounts billed, amounts paid, by whom said amounts were paid and the fee agreement.

Defendants state that this request is "entirely irrelevant" (Defs.' Mot. 4.) At the hearing,

1 Plaintiff argued that these documents would be relevant to show that Defendants had money to pay
2 for their attorneys, which would belie their claim that they did not have money to pay the debt owed
3 to Plaintiff. Defendants countered that the Zanett note program at issue in this case involved
4 Plaintiff's investment in fully subordinated obligations, that the superior obligations had priority for
5 payment over Plaintiff's notes, and that those superior obligations are outstanding at this time. As
6 discussed above, Plaintiff also argued that every financial transaction, including payment of
7 atttorneys' fees, should be made available to her because of her claim that Defendants engaged in a
8 pyramid scheme. Plaintiff's motion to compel the production of documents responsive to Plaintiff's
9 RFP No. 16 is **denied,** for the reasons stated above with respect to RFP No. 4.

### iv. Request for Production No. 17: Other Zanett Investors

Plaintiff's RFP No. 17 is as follows:

> REQUEST NO. 17: List of Zanett Notes investors whose payments are or were in default during the life of the notes from the beginning of the sale of the notes to the date of production.

Plaintiff argues that some 45 other investors were victims of Defendants' schemes and that she seeks their names, addresses, and contact information to contact them presumably about this case. While the requested information, when restricted to those Zanett Notes investors who made a complaint or otherwise indicated their dissatisfaction with the program, could lead to evidence relevant to Plaintiff's claims, it could contain sensitive private information. Accordingly, Defendants must produce the names and contact information of any Zanett Notes investor who, broadly construed, has complained about the program. The production shall take place **by April 10, 2014**, but shall be pursuant to the protective order the parties have entered into. In addition, Plaintiff, who is representing herself, is not subject to the rules of professional ethics that ordinarily govern counsel. To protect against potential abuse, the court orders that if Plaintiff contacts any Zanett Notes investors, she must clearly identify herself and state her reason for making contact, and may not continue the contact if the investor indicates his or her unwillingness to be contacted. Plaintiff must also make a contemporaneous log of the names and dates of all contacts.

**B.     Defendants' Interrogatories to Plaintiff**

1    Plaintiff has objected to four interrogatories propounded by Defendants.  Each of these
2 interrogatories seek to discover the factual basis for allegations in Plaintiff's complaint—so called
3 "contention interrogatories."

4    Under Federal Rule of Civil Procedure 33, interrogatories "may relate to any matter that may
5 be inquired into under Rule 26(b)," and an interrogatory is not objectionable merely because it asks
6 for contentions that relate to fact or the application of law to fact.  Fed. R. Civ. P. 33(a)(2).
7 "Requiring a party to answer contention interrogatories is consistent with Rule 11 of the Federal
8 Rules of Civil Procedure, which requires that plaintiffs must have some factual basis for the
9 allegations in their complaint." *U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 649
10 (C.D. Cal. 2007) (quotation omitted).  On the one hand, contention interrogatories can serve to attain
11 the useful goals of clarifying the issues in the case, narrowing the scope of the dispute, setting up
12 early settlement discussions, or expose a substantial basis for a motion under Rule 11 or Rule 56.
13 *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 338-39 (N.D. Cal. 1985). On the other
14 hand, "[c]ontention interrogatories asking for each and *every* fact . . . that supports particular
15 allegations in an opposing pleading may be held overly broad and unduly burdensome." *S.E.C. v.*
16 *Berry*, No. C07-04431 RMW HRL, 2011 WL 2441706, at *4 (N.D. Cal. June 15, 2011) (citations
17 and quotations omitted) (emphasis in original).  Furthermore, contention interrogatories directed to a
18 pro se litigant are generally inappropriate. *Morgan v. Haviland*, No. 2:09-CV-2155 WBS KJN,
19 2011 WL 2433648 at *2 (E.D. Cal. June 14, 2011) (quotation omitted).  *But see McColm v. San*
20 *Francisco Hous. Auth.*, C-02-5810 PJH (JCS), 2007 WL 218920, at *1 (N.D. Cal. Jan. 29, 2007)
21 (permitting properly framed interrogatories against pro se plaintiff).

22    The court has examined Defendants' Interrogatory Nos. 1-4 and finds that they are relevant
23 to the claims and defenses raised in this case, but are overbroad and unduly burdensome.
24 Accordingly, Plaintiff is compelled to respond as follows:

25    1.    **Interrogatory No. 1.**  Defendants' Interrogatory No. 1 seeks information about Plaintiff's breach of contract claim.  For each Defendant against whom Plaintiff asserts a breach of contract claim, Plaintiff must specifically identify the contract and the nature of the alleged breach.

    2.    **Interrogatory No. 2.**  Defendants' Interrogatory No. 2 seeks information about

Plaintiff's claim for breach of fiduciary duty. For each Defendant against whom Plaintiff asserts a breach of fiduciary claim, Plaintiff must identify the basis for her belief that a fiduciary duty exists as between that Defendant and Plaintiff and the nature of the alleged breach.

3. **Interrogatory Nos. 3 and 4:** Defendants' Interrogatory Nos. 3 and 4 seek information about the misrepresentations and omissions that supports Plaintiff's claims for fraud and negligent omission. For each of these Interrogatories, Plaintiff must identify the misrepresentation or omissions, and the party that made the misrepresentation or was responsible for the omission.

**C.    Defendants' Requests for Production to Plaintiff**

In their ex parte letter, Defendants seek to compel Plaintiff to respond to approximately 30 RFPs. (Defs.'s Mot. 2.) However, Plaintiff's letter—filed before Defendants'—does not address these RFPs. Nor does Defendants' letter state that the parties have met and conferred regarding the disputed RFPs. Accordingly, Defendants' motion to compel responses to their RFPs is denied without prejudice, and the parties are ordered to meet and confer further on the matter. At the hearing, the court provided guidance to the parties with respect to certain recurring legal issues raised in Plaintiff's objections to these RFPs. If the parties are unable to resolve this dispute, they shall submit a joint letter pursuant to this court's standing order on discovery procedures. *See* Docket No. 55.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion to compel is **granted in part and denied in part**, and Defendants' motion to compel is also **granted in part and denied in part**. Plaintiff and Defendants must provide the information ordered herein by no later than **April 10, 2014**.

IT IS SO ORDERED.

Dated: March 31, 2014

DONNA M. RYU
United States Magistrate Judge